[PUBLISH]

**FILED**

3/23/05

Date                    Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

No. 05-11556

D. C. Docket No. CV-05-00530-T

THERESA MARIA SCHINDLER SCHIAVO,
incapacitated ex rel, Robert Schindler and
Mary Schindler, her parents and next friends,

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 23, 2005
THOMAS K. KAHN
CLERK
```

Plaintiffs-Appellants,

versus

MICHAEL SCHIAVO,
as guardian of the person of
Theresa Marie Schindler Schiavo, incapacitated,
JUDGE GEORGE W. GREER,
THE HOSPICE OF THE FLORIDA SUNCOAST, INC.,

Defendants-Appellees.

---

Appeal from the United States District Court for the
Middle District of Florida

---

(March 23, 2005)

Before CARNES, HULL, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs have appealed the district court's denial of their motion for a
temporary restraining order to require the defendants to transport Theresa Marie

Schindler Schiavo to a hospital to reestablish nutrition and hydration and for any
medical treatment necessary to sustain her life, and to require the state court judge
defendant to rescind his February 25, 2005 order directing removal of nutrition and
hydration from Schiavo and to restrain him from issuing any further orders that
would discontinue nutrition and hydration.[1] After notice and a hearing, the district
court entered a careful order which is attached as an Appendix to this opinion.
Plaintiffs have also petitioned this Court to grant the same injunctive relief under
the All Writs Act, 28 U.S.C. § 1651(a).

  Although we ordinarily do not have jurisdiction over appeals from orders
granting or denying temporary restraining orders, in circumstances such as these,
"when a grant or denial of a TRO might have a serious, perhaps irreparable,
consequence, and can be effectually challenged only by immediate appeal, we may
exercise appellate jurisdiction." Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995)
(internal citations, marks, and ellipsis omitted); see also United States v. Wood,
295 F.2d 772, 778 (5th Cir. 1961). In these circumstances we treat temporary
restraining orders as equivalent to preliminary injunctions or final judgments, either
of which are appealable. See 28 U.S.C. §§ 1291 & 1292(a)(1).

  The district court correctly stated the four factors to be considered in
determining whether temporary restraining or preliminary injunctive relief is to be

---

[1] Our dissenting colleague says that "the denial of Plaintiffs' request for an injunction
frustrates Congress's intent, which is to maintain the status quo." Dissenting Op. at __. The status
quo is that Mrs. Schiavo is not receiving nutrition and hydration. The plaintiffs do not want the
status quo maintained. They want this Court or the district court to issue an injunction affirmatively
requiring the respondents to change the status quo by bringing about the surgical procedure necessary
to reinsert the feeding tube into Mrs. Schiavo.

2

granted, which are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. See Ingram, 50 F.3d at 900; Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Requests for emergency injunctive relief are not uncommon in federal court and sometimes involve decisions affecting life and death. Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion. See Siegel, 234 F.3d at 1176; see also Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 339, 119 S. Ct. 1961, 1978 (1999) ("Plaintiffs with questionable claims would not meet the likelihood of success criterion.").

Applying those factors, the district court determined that the last three weighed in favor of granting the temporary restraining order. The court reasoned that because those three factors were met, plaintiffs only had to show a substantial case on the merits. After analyzing each of plaintiffs' claims, the district court concluded they had failed to show a substantial case on the merits as to any of the claims.[2]

While the district court conducted de novo review of plaintiffs' claims, we review the district court's denial of temporary injunctive relief only for an abuse of

---

[2] The dissent bemoans the fact that the merits of the plaintiffs' claims will never be litigated in federal court. The district court's finding regarding the first-prong injunctive relief factor reflects that those claims lack merit, or at least that the possibility of any merit is too low to justify preliminary injunctive relief.

3

discretion. This scope of review will lead to reversal only if the district court applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect. Klay v. United Healthcare, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004); Chi. Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001). Short of that, an abuse of discretion standard recognizes there is a range of choice within which we will not reverse the district court even if we might have reached a different decision. See McMahon v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001); Rasbury v. Internal Revenue Serv. (In re Rasbury), 24 F.3d 159, 168-69 (11th Cir. 1994).[3]

For the reasons explained in the district court's opinion, we agree that the plaintiffs have failed to demonstrate a substantial case on the merits of any of their claims. We also conclude that the district court's carefully thought-out decision to deny temporary relief in these circumstances is not an abuse of discretion.[4]

The principal theme of plaintiffs' argument against the district court's denial of a temporary restraining order is that Pub. L. No. 109-3, which Congress enacted to enable them to bring this lawsuit, mandates that injunctive relief be granted to

[3] Part II of the dissent argues that we should grant an injunction and discusses the four factors as though this Court were making the decision in the first instance. We are not. We are an appellate court reviewing the district court's decision. There is no occasion for us to decide whether to issue an injunction pending appeal, because the only appeal we have before us is from the district court's denial of a temporary restraining order, and we are deciding that appeal now.

[4] In arguing that an injunction should be issued, the dissent refers to "a situation where a few days' delay" is all that is necessary. That is not this situation. To afford the plaintiffs the pretrial discovery and full jury trial of all issues they demand would require a delay of many months, if not longer.

4

enable them to have a full trial on the merits of their claims. Pub. L. No. 109-3 is
an extraordinary piece of legislation, and it does many things. Defendants contend
that the legislation is so extraordinary that it is unconstitutional in several respects.
We need not decide that question. For purposes of determining whether temporary
or preliminary injunctive relief is appropriate, we indulge the usual presumption
that congressional enactments are constitutional. United States v. Morrison, 529
U.S. 598, 607, 120 S. Ct. 1740, 1748 (2000); Benning v. Georgia, 391 F.3d 1299,
1303 (11th Cir. 2004). It is enough for present purposes that in enacting Pub. L.
No. 109-3 Congress did not alter for purposes of this case the long-standing
general law governing whether temporary restraining orders or preliminary
injunctions should be issued by federal courts.

There is no provision in Pub. L. No. 109-3 addressing whether or under what
conditions the district court should grant temporary or preliminary relief in this
case. There is no more reason in the text of the Act to read in any special rule
about temporary or preliminary relief than there would be to read in a special rule
about deciding the case before trial on Fed.R.Civ.P. 12(b)(6) or summary judgment
grounds. Not only that, but Congress considered and specifically rejected
provisions that would have mandated, or permitted with favorable implications, the
grant of the pretrial stay. There is this enlightening exchange in the legislative
history concerning the Senate bill that was enacted:

> Mr. LEVIN. Mr. President, I rise to seek clarification from the
> majority leader about one aspect of this bill, the issue of whether
> Congress has mandated that a Federal court issue a stay pending
> determination of the case.

CI Section USCA ATLANTA                                    ☑️007

Mr. FRIST. I would be pleased to help clarify this issue.

Mr. LEVIN. Section 5 of the original version of the Martinez bill conferred jurisdiction on a Federal court to hear a case like this, and then stated that the Federal court "shall" issue a stay of State court proceedings pending determination of the Federal case. I was opposed to that provision because I believe Congress should not mandate that a Federal judge issue a stay. Under longstanding law and practice, the decision to issue a stay is a matter of discretion for the Federal judge based on the facts of the case. The majority leader and the other bill sponsors accepted my suggestion that the word "shall" in section 5 be changed to "may."

The version of the bill we are now considering strikes section 5 altogether. Although nothing in the text of the new bill mandates a stay, the omission of this section, which in the earlier Senate-passed bill made a stay permissive, might be read to mean that Congress intends to mandate a stay. I believe that reading is incorrect. The absence of any state [sic] provision in the new bill simply means that Congress relies on current law. Under current law, a judge may decide whether or not a stay is appropriate.

Does the majority leader share my understanding of the bill?

Mr. FRIST. I share the understanding of the Senator from Michigan, as does the junior Senator from Florida who is the chief sponsor of this bill. Nothing in the current bill or its legislative history mandates a stay. I would assume, however, the Federal court would grant a stay based on the facts of this case because Mrs. Schiavo would need to be alive in order for the court to make its determination. Nevertheless, this bill does not change current law under which a stay is discretionary.

Mr. LEVIN. In light of that assurance, I do not object to the unanimous consent agreement under which the bill will be considered by the Senate. I do not make the same assumption as the majority leader makes about what a Federal court will do. Because the discretion of the Federal court is left unrestricted in this bill, I will not exercise my right to block its consideration.

151 Cong. Rec. S3099-100 (daily ed. Mar. 20, 2005) (colloquy between Sens. Levin & Frist).

6

This enlightening exchange does not contradict the plain meaning of Pub. L. No. 109-3, but instead reinforces it. Plainly, Congress knew how to change the law to favor these plaintiffs to the extent that it collectively wished to do so. That is what the changes it did make, including those to standing law, the <u>Rooker-Feldman</u> doctrine, and abstention, demonstrate. When Congress explicitly modifies some pre-existing rules of law applicable to a subject but says nothing about other rules of law, the only reasonable reading is that Congress meant no change in the rules it did not mention. The dissent characterizes the language of the Act as clear. It is on this point: the language of the Act clearly does not purport to change the law concerning issuance of temporary or preliminary relief.[5]

To interpret Pub. L. No. 109-3 as requiring that temporary or preliminary relief be entered regardless of whether it is warranted under pre-existing law would go beyond reading into the Act a provision that is not there. It would require us to read into the Act a provision that Congress deliberately removed in order to clarify that pre-existing law did govern this issue.

Nor do we find convincing plaintiffs' argument that in reaching its decision to deny the motion for a temporary restraining order the district court violated Pub. L. No. 109-3 by considering the procedural history of extensive state court litigation. The plaintiffs' complaint and other filings in the district court asserted

___

[5] Contrary to the dissent's assertion, we do not believe that the text of the Act limits or eliminates a court's power to grant temporary or preliminary relief. Exactly the contrary. Our position is that the Act, which does not mention that subject, and which was amended to remove a provision that would have changed the law, does not affect it at all. The district court applied settled law and so do we.

7

that they had not been afforded procedural due process by the state courts. Their pleadings and brief in the district court and this Court are replete with citations to and discussion about the state court proceedings and decisions. In deciding whether the plaintiffs had shown a substantial case on the merits of their federal procedural due process claims, the district court had to consider the prior proceedings in state court. There is no way to consider a claim that the state court proceedings violated the Due Process Clause without examining what those proceedings were. In obedience to Pub. L. No. 109-3 the district court considered the federal constitutional claims de novo and made its own independent evaluation of them.

Plaintiffs have also moved this Court under the All Writs Act, 28 U.S.C. § 1651(a), for emergency injunctive relief pending appeal, asking us to order the same temporary or preliminary relief that we have concluded the district court did not abuse its discretion in denying. They are supported in that motion by a Statement of Interest filed by the United States' Department of Justice.

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id. The purpose of the power codified in that statute is to allow courts "to protect the jurisdiction they already have, derived from some other source." Klay, 376 F.3d at 1099. It gives a "residual source of authority to issue writs that are not otherwise covered by statute" and is an "extraordinary remedy that . . . is essentially equitable

8

and, as such, not generally available to provide alternatives to other, adequate

remedies at law." Id. at 1100 (internal quotes and citations omitted).

Our decisions make clear that where the relief sought is in essence a

preliminary injunction, the All Writs Act is not available because other, adequate

remedies at law exist, namely Fed.R.Civ.P. 65, which provides for temporary

restraining orders and preliminary injunctions. See Fla. Med. Ass'n v. U.S. Dep't

of Health, Educ. & Welfare, 601 F.2d 199, 202-03 (5th Cir. 1979) (reversing the

district court's grant of injunction under the All Writs Act because "Rule 65

provides sufficient protection for the jurisdiction of the district court"); Klay, 376

F.3d at 1101 n.13.

In Klay, we explained that the injunction sought in Florida Medical

Association was a "textbook" example of a preliminary injunction because "[i]t

was issued to preserve the status quo and prevent allegedly irreparable injury until

the court had the opportunity to decide whether to issue a permanent injunction."

Klay, 376 F.3d at 1101 n.13. The injunction being sought by the plaintiffs is

another textbook example of an effort to use the All Writs Act in order to

circumvent the requirements for preliminary injunctive relief. Granting the

injunctive relief would "confer[] the same legal rights upon plaintiffs and impose[]

the same legal duties upon defendants as would a preliminary injunction." Fla.

Med. Ass'n, 601 F.2d at 202; id. (the All Writs Act "does not authorize a district

court to promulgate an ad hoc procedural code"). Under our circuit law, the All

Writs Act cannot be used to evade the requirements for preliminary injunctions.

9

Klay, 376 F.3d at 1101 n.13.

There is no denying the absolute tragedy that has befallen Mrs. Schiavo. We all have our own family, our own loved ones, and our own children. However, we are called upon to make a collective, objective decision concerning a question of law. In the end, and no matter how much we wish Mrs. Schiavo had never suffered such a horrible accident, we are a nation of laws, and if we are to continue to be so, the pre-existing and well-established federal law governing injunctions as well as Pub. L. No. 109-3 must be applied to her case. While the position of our dissenting colleague has emotional appeal, we as judges must decide this case on the law.

AFFIRMED; PETITION FOR INJUNCTIVE RELIEF DENIED.[6]

---

[6] A petition for rehearing or suggestion for rehearing en banc is not, of course, required before a petition for certiorari may be filed in the United States Supreme Court. If, however, a petition for rehearing or rehearing en banc is to be filed, it must be filed by 10:00 a.m. ET, March 23, 2005. See Fed.R.App.P. 35(c) & Fed.R.App.P. 40(a)(1).

WILSON, Circuit Judge, dissenting:

I strongly dissent from the majority's decision to deny the request for an injunction pursuant to the All Writs Act and the request for a preliminary injunction. First, Plaintiffs have demonstrated their entitlement to a preliminary injunction. Second, the denial of Plaintiffs' request for an injunction frustrates Congress's intent, which is to maintain the status quo by keeping Theresa Schiavo alive until the federal courts have a new and adequate opportunity to consider the constitutional issues raised by Plaintiffs. The entire purpose for the statute was to give the federal courts an opportunity to consider the merits of Plaintiffs' constitutional claims with a fresh set of eyes. Denial of Plaintiffs' petition cuts sharply against that intent, which is evident to me from the language of the statute, as well as the swift and unprecedented manner of its enactment. Theresa Schiavo's death, which is imminent, effectively ends the litigation without a fair opportunity to fully consider the merits of Plaintiffs' constitutional claims.

We should, at minimum, grant Plaintiffs' All Writs Petition for emergency injunctive relief. First, I note that there is no precedent that prohibits our granting of this petition. Second, mindful of equitable principles, the extraordinary circumstances presented by this appeal require that we grant the petition to preserve federal jurisdiction and permit the opportunity to give Plaintiffs' claims the full and meaningful review they deserve.

In considering this extraordinary case, I am mindful that "[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould

11

each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (citations omitted). Keeping those principles firmly in mind, "mercy and practicality" compel us to grant the relief requested.

## I. All Writs Act, 28 U.S.C. § 1651

The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Federal courts have "both the inherent power and the *constitutional obligation* to protect their jurisdiction . . . to carry out Article III functions." *Procup v. Strickland*, 792 F.3d 1069, 1074 (11th Cir. 1986) (en banc) (emphasis added). Toward that end, the All Writs Act permits federal courts to protect their jurisdiction with regards to "not only ongoing proceedings, but potential future proceedings." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (internal citations omitted); *ITT Comm. Devel. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978)[1] ("When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it."). Although the Act does not

---

[1] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

create any substantive federal jurisdiction, it empowers federal courts "to issue writs in aid of jurisdiction previously acquired on some other independent ground," *see Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1971), and codifies the "federal courts' traditional, inherent power to protect the jurisdiction they already have." *Klay*, 376 F.3d at 1099.

An injunction under the All Writs Act is an extraordinary remedy, one that "invests a court with a power that is essentially equitable, and as such, not generally available." *Clinton v. Goldsmith*, 526 U.S. 529, 537, 119 S. Ct 1538, 1543 (1999). A federal court's power under the Act, while limited, is broad enough that "[a] court may grant a writ under this act whenever it is 'calculated [in the court's] sound judgment to achieve the ends of justice entrusted to it." *Klay*, 376 F.3d at 1100 (citing *Adams v. United States*, 317 U.S. 269, 273, 63 S. Ct. 236, 239 (1942)).

I am careful to stress that equitable relief under the All Writs Act is not to be confused with a traditional injunction, which is "predicated upon some cause of action." *Klay*, 376 F.3d at 1100. An injunction entered pursuant to the All Writs Act is not a substitute for traditional injunctive relief. The All Writs Act injunction is distinguished from a traditional injunction not by its effect, but by its purpose. To obtain relief under the All Writs Act, Plaintiffs need not satisfy the traditional four-part test associated with traditional injunctions "because a court's traditional power to protect its jurisdiction, codified by the act, is grounded in entirely separate concerns." *Id.* However, Plaintiffs must show that "some ongoing

13

proceeding . . . is being threatened by someone else's action or behavior." *Id.*
Relief pursuant to the All Writs Act should only be granted in extraordinary
circumstances where inaction would prevent a federal court from exercising its
proper Article III jurisdiction.[2]

As an appellate court, we may grant All Writs Act relief to preserve our
"potential jurisdiction . . . where an appeal is not then pending but may be later
perfected." *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603, 86 S. Ct. 1738, 1742
(1966). In *Dean Foods*, the Supreme Court sustained the entry of a preliminary
injunction that prevented the consummation of a merger of two corporations. The
Supreme Court held that the use of an All Writs Act injunction was particularly
appropriate in a situation where "an effective remedial order . . . would otherwise
be virtually impossible." *Id.* at 605. That is precisely the case here.

Plaintiffs have demonstrated that the issuance of an injunction is essential to
preserve the federal courts' ability to "bring the litigation to a natural conclusion."
*Klay*, 376 F.3d at 1102. By failing to issue an injunction requiring the reinsertion
of Theresa Schiavo's feeding tube, we virtually guarantee that the merits of
Plaintiffs' claims will never be litigated in federal court. That outcome would not

---

[2] The majority opinion holds that the All Writs Act is not appropriate in this case because
"where the relief sought is in essence a preliminary injunction, the All Writs Act is not available
because other, adequate remedies at law exist, namely Fed.R.Civ.P. 65, which provides for
temporary restraining orders and preliminary injunctions" Maj. Opn. at * 7-8. I do not argue with
that point. However, in this case, the relief Plaintiffs seek is not a preliminary injunction by another
name. Rather, the purpose for which Plaintiffs ask that we reinsert Theresa Schiavo's feeding tube
is to permit a federal court to have time within which to exercise its jurisdiction and fully entertain
Plaintiffs' claims. Thus, the purpose of entering an injunction in this case is limited to the narrow
goal of aiding the exercise of federal jurisdiction. Plaintiffs' claim is precisely the one and only type
of situation in which an All Writs Act injunction is appropriate and for which there is no other
adequate remedy at law.

14

only result in manifest injustice, but it would thwart Congress's clearly expressed command that Plaintiffs' claims be given *de novo* review by a federal court.

Given the extraordinary circumstances of this case, we are fully within our power to issue an injunction "in aid of [our] jurisdiction" pursuant to the All Writs Act. Under the Act, "[a] court may enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *Klay*, 376 F.3d at 1102 (citing *Barton*, 569 F.2d at 1359). Federal courts may "compel acts necessary to promote the resolution of issues in a case properly before it" including "issu[ing] orders to aid in conducting factual inquiries." *Id.* (citations and internal quotation omitted).

The issuance of an All Writs Act injunction is, as mentioned earlier, an extraordinary remedy. However, this case is clearly extraordinary. Furthermore, entry of an All Writs Act injunction is necessary to preserve federal jurisdiction to hear Plaintiffs' claims. My research has not revealed any precedent which clearly prohibits the entry of an All Writs Act injunction in a situation where a few days' delay is "necessary or appropriate in aid of" federal court jurisdiction. 28 U.S.C. 1651. In contrast, refusing to grant the equitable relief would, through Theresa Schiavo's death, moot the case and eliminate federal jurisdiction.

This deprivation would directly contravene Congress's recent enactment granting jurisdiction in this case. An Act for the relief of the parents of Theresa Marie Schiavo, Pub. L. No. 109-3 § 2 (Mar. 21, 2005). The first step in statutory interpretation requires that courts apply the plain meaning of the statutory language

15

unless it is ambiguous. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.
Ct. 1146, 1149 (1992); *United States v. Fisher*, 289 F.3d 1329, 1337-38 (11th Cir.
2002). Only when we find ambiguity in the statute's text should we apply canons
of statutory interpretation, such as the canon of constitutional avoidance. *Dep't of
Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 134, 122 S. Ct. 1230, 1235 (2002).

Because the language of the statute is clear, the majority's reliance on
legislative history is unwarranted and incorrect. As originally proposed, the Act
mandated a stay of proceedings while the district court considered Plaintiffs'
claims. A later version changed the language from "shall" (mandating a stay) to
"may" (authorizing a stay). *See* 151 Cong. Rec. 3099, 3100 (daily ed. Mar. 20,
2005) (statement of Sen. Levin). Although the final version of the Act did not
contain any stay provision, we should not read this to mean that Congress intended
to deny this Court the power to issue a stay. The reason that Congress deleted the
stay provision is that "this bill does not change current law under which a stay is
discretionary." *Id.* (statement of Sen. Frist). In short, the legislation did not need
an explicit stay provision because, given the already-existing discretionary power
of federal courts to issue injunctions in aid of jurisdiction, it would have been
redundant and unnecessary. Therefore, the majority's assertion that the text of the
statute limits or eliminates our power to enter an injunction is misplaced.

Here, we have Congress's clear mandate requiring the federal courts to
consider the actual merits of Plaintiff's claims. Congress intended for this case to
be reviewed with a fresh set of eyes. We are not called upon to consider the

16

wisdom of this legislation. In granting this injunction we would merely effectuate Congress's intent.

If Congress had intended that federal review of the issues raised by Plaintiffs be given customary and ordinary treatment, that review would be confined to consideration of the denial of the motion for a writ of habeas corpus in Case No. 05-11517. There, consideration of Plaintiffs' constitutional claims would be limited by the substantial deference that is afford to previous state court determinations. Yet, Congress went to great lengths to remove many of those limitations. First, the legislation eliminates any "standing" barriers to the commencement of an action by Plaintiffs. Secondly, the legislation gives the Middle District of Florida entirely new consideration over any claim of a violation of Theresa Schiavo's constitutional rights, without respect to "any prior state court determination and regardless of whether such a claim has previously been raised, considered, or decided in state court proceedings." The legislation goes even further to eliminate any exhaustion requirements. Congress obviously intended that this case be considered by federal courts without the customary limitations. Today, we are not called upon to second-guess the wisdom of Congress, but to apply the law it has passed.

## II. Preliminary Injunction

At first glance, Plaintiffs' request for an injunction does not appear as strong as their claim pursuant to the All Writs Act. However, I believe that an injunction is appropriate and, at the very least, we should issue an injunction to permit the

17

district court to review to review Plaintiffs' claims on the merits.

To prevail on their request for injunctive relief, Plaintiffs must demonstrate the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not issued; (3) threatened injury to the movant outweighs the potential damage that the proposed injunction may cause the defendants; and (4) the injunction will not be adverse to the public interest. *See All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (citation omitted). The issuance of an injunction is an extraordinary remedy, and the moving party "bears the burden to clearly establish the four prerequisites." *Café 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993).

It is clear from our cases that proof of a substantial likelihood of success on the merits is an indispensable prerequisite to a preliminary injunction. *All Care Nursing Serv.*, 887 F.2d at 1537. However, the movant must demonstrate a "substantial likelihood," not a substantial certainty. To require more undermines the purpose of even considering the other three prerequisites. Thus, instead, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the [preliminary injunction]." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam); *see Gonzalez v. Reno*, No. 00-11424-D, 2000 WL 381901 at *1 (11th Cir. Apr. 19, 2000); *United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992) (quoting ); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). The review "require[s] a delicate balancing of the probabilities of

18

ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Siegel v. Lepore,* 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc).

As we stated in *Gonzalez,* "where the balance of the equities weighs heavily in favor of granting the [injunction], the movant need only show a substantial case on the merits." *Gonzalez,* 2000 WL 381901 at *1 (internal citations omitted) (alteration in original). In this case, the balance of the equities weighs heavily in favor of granting the injunction. We determine the balance of the equities by examining the three final factors required to grant a preliminary injunction. *Garcia-Mir,* 781 F.2d at 1453.

"A showing of irreparable harm is the *sine qua non* of injunctive relief." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990) (citation and internal quotation omitted). Here, the immediate irreparable injury is not only possible, it is imminent. I am aware of no injury more irreparable than death. Clearly, the threatened injury of death outweighs any harm the proposed injunction may cause, i.e. reinserting the feeding tube. In fact, I fail to see any harm in reinstating the feeding tube. On the other hand, a denial of the request for injunction will result in the death of Theresa Schiavo. Finally, an injunction in this case clearly would not be adverse to public interest, thus satisfying the fourth and final criteria necessary to grant a preliminary injunction. Upon reviewing these three factors, it is obvious that the equities weigh heavily in favor of granting the injunction.

19

I now consider the first prong, whether Plaintiffs presented a substantial case on the merits. In the complaint, Plaintiffs claim that Theresa Schiavo's Fourteenth Amendment due process rights were violated in that she was not provided a fair and impartial trial, she was not given adequate procedural due process, and she was not afforded equal protection of the laws. Further, Plaintiffs contend that Theresa Schiavo's First Amendment freedom to exercise her religion has been burdened by the state court's order to remove the feeding tube. Plaintiffs also allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

The establishment of a "substantial likelihood for success on the merits" is a heavy burden, but not an insurmountable one. A movant need not establish that he can hit a home run, only that he can get on base, with a possibility of scoring later. In fact, our circuit jurisprudence establishes that the movant need not establish a "probability" of success, taking all things into consideration. The merits of Plaintiffs' substantial claims warrant a more complete review. I do not mean to suggest that Plaintiffs will definitely prevail on the merits, but merely that she has presented a sufficient case on the merits. She raises legal issues necessitating the grant of the preliminary injunction and should be afforded an opportunity to defend the merits of her claims. Adjudication on the merits is impossible if we do not grant the injunction.

Finally, I note that awarding an injunction is an equitable decision. We have broad powers to fashion a remedy in equity. We are required to balance the

20

equities, and when we do, we should find that the gravity of the irreparable injury
Theresa Schiavo would suffer could not weigh more heavily in Plaintiffs' favor. In
contrast, there is little or no harm to be found in granting this motion for a
temporary injunction and deciding the full merits of the dispute.

For the foregoing reasons, I respectfully dissent.

# APPENDIX TO THE MAJORITY OPINION

THERESA MARIE SCHINDLER SCHIAVO, Incapacitated ex rel., ROBERT SCHINDLER and MARY SCHINDLER, her Parents and Next Friends, Plaintiffs, vs. MICHAEL SCHIAVO, JUDGE GEORGE W. GREER and THE HOSPICE OF THE FLORIDA SUNCOAST, INC., Defendants.

Case No. 8:05-CV-530-T-27TBM

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

*2005 U.S. Dist. LEXIS 4265*

March 22, 2005, Decided

COUNSEL: [*1] For Theresa Marie Schindler Schiavo, incapacitated ex rel, Robert Schindler and Mary Schindler, her parents and next friends, Plaintiff: David C. Gibbs, III, Gibbs Law Firm, Seminole, FL; George E. Tragos, Law Office of George E. Tragos, Clearwater, FL; Robert A. Destro, Columbus School Of Law, Washington, DC.

For Michael Schiavo, as guardian of the person of Theresa Marie Schindler Schiavo, incapacitated, Defendant: George J. Felos, Felos & Felos, P.A., Dunedin, FL; Iris Bennett, Jenner & Block LLC, Washington, DC; Randall C. Marshall, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL; Rebecca H. Steele, ACLU Foundation of Florida, Inc., West Central Florida Office, Tampa, FL; Robert M. Portman, Jenner & Block, Washington, DC; Thomas J. Perrelli, Jenner & Block, Washington, DC.

# APPENDIX TO THE MAJORITY OPINION

For The Hospice of the Florida Suncoast, Inc., Defendant:
Gail Golman Holtzman, Constangy, Brooks & Smith, LLC,
Tampa, FL; John W. Campbell, Constangy, Brooks &
Smith, LLC, Tampa, FL; Robin G. Midulla, Robin Greiwe
Midulla, P.A., Tampa, FL.

For Liberty Counsel, Inc., Amicus: Erik W. Stanley,
Liberty Counsel, Longwood, FL.

For United States, Interested Party: Paul I. Perez, [*2]
U.S. Attorney's Office, Middle District of Florida, Orlando,
FL; Warren A. Zimmerman, U.S. Attorney's Office, Middle
District of Florida, Tampa, FL.

For Morton Plant Hospital Association, Inc., Victor E.
Gambone, M.D., Morton Plant Mease Primary Care, Inc.,
Stanton P. Tripodis, M.D., Interested Parties: James
Addison Martin, Jr., Macfarlane Ferguson & McMullen,
Clearwater, FL; Jeffrey W. Gibson, MacFarlane Ferguson
& McMullen, Clearwater, FL.

Gordon Wayne Watts, Interested Party, Pro se, Lakeland,
FL.

JUDGES: JAMES D. WHITTEMORE, United States
District Judge.

OPINIONBY: JAMES D. WHITTEMORE

OPINION:

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion for Temporary Restraining Order (Dkt. 2). In their motion, Plaintiffs seek an order directing Defendants to Schiavo and Hospice to transport Theresa Schiavo to Morton Plant Hospital for any necessary medical treatment to sustain her life and to reestablish her nutrition and hydration. This action and Plaintiffs' motion were filed in response to an order of Pinellas County Probate Judge George W. Greer directing Defendant Schiavo, Theresa Schiavo's husband and plenary guardian, to discontinue her nutrition and hydration.

The court [*3] conducted a hearing on Plaintiffs' motion after notice to Defendants. Upon consideration, Plaintiffs' Motion for Temporary Restraining Order is denied.

Plaintiffs, the parents of Theresa Marie Schindler Schiavo, brought this action pursuant to a Congressional Act signed into law by the President during the early morning hours of March 21, 2005. n1 The Act, entitled "An Act for the relief of the parents of Theresa Marie Schiavo," provides that the:

> United States District Court for the Middle District of Florida shall have jurisdiction to hear, determine, and render judgment on a suit or claim by or on behalf of Theresa Marie Schiavo for the alleged violation of

23

# APPENDIX TO THE MAJORITY OPINION

any right of Theresa Marie Schiavo under the Constitution or laws of the United States relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain life.

n1 Pub. L. No. 109-3 (March 21, 2005).

## Jurisdiction and Standing

The federal district courts are courts of limited jurisdiction, "empowered [*4] to hear only those cases . . . which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).* The plain language of the Act establishes jurisdiction in this court to determine *de novo* "any claim of a violation of any right of Theresa Schiavo within the scope of this Act." The Act expressly confers standing to Plaintiffs as her parents to bring any such claims. There can be no substantial question, therefore, that Plaintiffs may bring an action against a party to the state court proceedings in this court for claimed constitutional deprivations or violations of federal law occasioned on their daughter relating to the withholding or withdrawal of food, fluids, or medical treatment necessary to sustain her life. Whether the Plaintiffs may bring claims in federal court is not the issue confronting the court today, however.

The issue confronting the court is whether temporary injunctive relief is warranted.

### Applicable Standards

While there may be substantial issues concerning [*5] the constitutionality of the Act, for purposes of considering temporary injunctive relief, the Act is presumed to be constitutional. *Benning v. Georgia, 391 F.3d 1299, 1303 (11th Cir. 2004).*

The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits. *Canal Auth. of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).* A district court may grant a preliminary injunction only if the moving party shows that:

> (1) it has a substantial likelihood of success on the merits;

> (2) irreparable injury will be suffered unless the injunction issues;

> (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and

> (4) if issued, the injunction would not be adverse to the public interest.

24

# APPENDIX TO THE MAJORITY OPINION

*Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004); Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001).* A preliminary injunction is "an extraordinary [*6] and drastic remedy" and is "not to be granted unless the movant 'clearly established the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Auth. of State of Florida, 489 F.2d at 573).* n2

> n2 The Act does not address the traditional requirements for temporary injunctive relief. Accordingly, these standards control whether temporary injunctive relief is warranted, notwithstanding Congress' intent that the federal courts determine *de novo* the merits of Theresa Schiavo's claimed constitutional deprivations.

It is apparent that Theresa Schiavo will die unless temporary injunctive relief is granted. This circumstance satisfies the requirement of irreparable injury. Moreover, that threatened injury outweighs any harm the proposed injunction would cause. To the extent Defendants urge that Theresa Schiavo would be harmed by the invasive procedure reinserting the feeding tube, this court finds [*7] that death outweighs any such harm. Finally, the court is satisfied that an injunction would not be adverse to the public interest. Notwithstanding these findings, it is essential that Plaintiffs establish a substantial likelihood of success on the merits, which the court finds they have not done.

The first of the four prerequisites to temporary injunctive relief is generally the most important. *Gonzalez v. Reno,* No. 00-11424-D, *2000 WL 381901* at *1 (11th Cir. April 19, 2000). The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors. *Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (citing with auth. Washington Metro. Area Transit Comm 'n v. Holiday Tours, Inc., 182 U.S. App. D.C. 220, 559 F.2d 841, 843 (D.C. Cir. 1977)).*

A substantial likelihood of success on the merits requires a showing of only *likely* or probable, rather than *certain,* success. *Home Oil Company, Inc. v. Sam's East, Inc., 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002)* (emphasis in original); *see also Ruiz, 650 F.2d at 565.* "Where the 'balance [*8] of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'" *Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) (citing Ruiz, 650 F.2d at 565).*

This court has carefully considered the Act and is mindful of Congress' intent that Plaintiffs have an opportunity to litigate any deprivation of Theresa Schiavo's federal rights. The Court is likewise mindful of Congress' directive that a *de novo* determination be made "notwithstanding any prior State court determination." In

## APPENDIX TO THE MAJORITY OPINION

resolving Plaintiffs' Motion for Temporary Restraining Order, however, the court is limited to a consideration of the constitutional and statutory deprivations alleged by Plaintiffs in their Complaint and motion. Because Plaintiffs urge due process violations are premised primarily on the procedures followed and orders entered by Judge Greer in his official capacity as the presiding judge in the dispute between Michael Schiavo and Plaintiffs, their Complaint necessarily requires a consideration of the procedural history of the state court case to determine whether there is a showing of any due process [*9] violations. On the face of these pleadings, Plaintiffs have asserted five constitutional and statutory claims. To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim. n3

> n3 Plaintiffs have submitted affidavits of health care professionals regarding Theresa's medical status, treatment techniques and therapies which are available and their opinions regarding how and whether these treatments might improve Theresa's condition. Plaintiffs have not, however, discussed these affidavits in their papers and how they relate to the claimed constitutional deprivations.

### A. Count I - Violation of Fourteenth Amendment Due Process Right to a Fair and Impartial Trial

Plaintiffs allege in Count I that Theresa Schiavo's Fourteenth Amendment right to a fair and impartial trial was violated, contending that the presiding judge "became Terri's health care surrogate" and "also purported to act as an impartial trial judge in the same proceeding." (Dkt. 1, PP 47-48). They [*10] allege that once he "became an advocate for Terri's death, it became impossible for Judge Greer to maintain his role as an impartial judge in order to review his own decision that Terri would want to die." (Dkt. 1, P 49). Finally, they allege that "Judge Greer's dual and simultaneous role as judge and health-care surrogate denied Terri a fair and impartial trial." (Dkt. 1, P 50). These contentions are without merit.

Florida's statutory scheme, set forth in Chapter 765, contemplates a process for designation of a proxy in the absence of an executed advance directive and provides for judicial resolution of disputes arising concerning decisions made by the proxy. *See Fla. Stat.* § 765.401(1). Where a decision by the proxy is challenged by the patient's other family members, it is appropriate for the parties to seek "expedited judicial intervention." *Fla. Stat.* § 765.105. Applying this statutory scheme, the state court appointed Michael Schiavo, Theresa Schiavo's husband, as plenary guardian and proxy for Theresa. Thereafter, a dispute arose between Michael Schiavo and Plaintiffs concerning whether to continue Theresa on artificial life support, and Judge Greer, the presiding [*11] judge, was called upon to resolve that dispute.

Florida's statutory scheme contemplates a judicial resolution of these competing contentions. *See In re*

## APPENDIX TO THE MAJORITY OPINION

*Guardianship of Browning, 568 So. 2d 4, 16 (Fla. 1990).* As the Florida Second District Court of Appeal explained, where two "suitable surrogate decision-maker[s] . . .could not agree on the proper decision, ..." the guardian may invoke "the trial court's jurisdiction to allow the trial court to serve as the surrogate decision-maker." *In re Guardianship of Schiavo, 780 So. 2d 176, 178 (Fla. Dist. Ct. App. 2001)* ("Schiavo I"). Pursuant to Florida law, therefore, Judge Greer, as the presiding judge, had a statutory obligation to resolve the competing contentions between Michael Schiavo and Plaintiffs. *Fla. Stat.* § 765.105.

Plaintiffs offer no authority for their contention that Judge Greer compromised the fairness of the proceeding or the impartiality of the court by following Florida law and fulfilling his statutory responsibilities under Chapter 765 as presiding judge and decision-maker. n4 Plaintiffs' argument is that Judge Greer could not fulfill his judicial duties impartially while at [*12] the same time fulfilling his statutory duty to resolve the competing contentions of the parties as surrogate or proxy "to make decisions about life-prolonging procedures." *In re Guardianship of Schiavo,* No. *2D05-968, 2005 WL 600377* at *4 (Fl. Ct. App. March 16, 2005) ("Schiavo VI").*

> n4 During argument, Plaintiffs' counsel explained their criticism of Judge Greer's official actions as Judge Greer having exceeded his lawful authority by acting as a guardian contrary to *Fla.*

*Stat.* § 744.309(1)(b). Contrary to Plaintiffs' argument, § 744.309 merely prohibits a judge from acting as a guardian except under certain specified familial circumstances.

Plaintiffs' argument effectively ignores the role of the presiding judge as judicial fact-finder and decision-maker under the Florida statutory scheme. By fulfilling his statutory judicial responsibilities, the judge was not transformed into an advocate merely because his rulings are unfavorable to a litigant. Plaintiffs' contention that the statutory [*13] scheme followed by Judge Greer deprived Theresa Schiavo of an impartial trial is accordingly without merit. Defendant is correct that no federal constitutional right is implicated when a judge merely grants relief to a litigant in accordance with the law he is sworn to uphold and follow. This Court concludes that Plaintiffs cannot establish a substantial likelihood of success on the merits of Count I.

### B. Count II - Violation of Fourteenth Amendment Procedural Due Process Rights

In Count II, Plaintiffs contend that Theresa Schiavo's Fourteenth Amendment procedural due process rights were violated by Judge Greer's (1) failure to appoint a guardian *ad litem* (Dkt. 1, P 53), (2) failure to appoint an independent attorney to represent Theresa Schiavo's legal rights (Dkt. 1, P 54) and (3) denial of what Plaintiffs describe as "access to court" by his "failure to ever meet Terri personally" and failure to "personally assess Terri's

# APPENDIX TO THE MAJORITY OPINION

level of cognition and her responsiveness" (Dkt. 1, P 55).

Initially, the Court finds no authority recognizing as a matter of federal constitutional or statutory right that a state trial judge is required to "personally assess" a ward's "level of cognition [*14] and ...responsiveness." *Fla. Stat.* § 744.3725, on which Plaintiffs rely, is applicable to an action seeking to commit the ward to a facility and other circumstances not relevant to this case. Plaintiffs' conclusory allegation that Judge Greer denied Theresa Schiavo access to court by not requiring her presence is without merit.

With respect to Plaintiffs' contention that Judge Greer violated Theresa Schiavo's procedural due process rights by failing to appoint a guardian *ad litem*, the record belies this contention. In June, 1998, Judge Rives *sua sponte* appointed Richard L. Pearse, Jr., Esq. as guardian *ad litem* "for the purpose of reviewing the request for termination of life support on behalf of the wards [sic]." *In re Guardianship of Schiavo*, No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., June 11, 1998). The record reflects that attorney Pearse "fully complied with his June 11, 1998 Court Order of appointment" and was accordingly discharged on June 16, 1999 by Judge Boyer of the Pinellas County Circuit Court. Pearse served as guardian *ad litem* for one year and ultimately testified as a witness in the trial before Judge Greer. *In re Guardianship of Schiavo*, [*15] No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., Feb. 28, 2000). n5 Accordingly, assuming Fourteenth Amendment procedural due process requires the appointment of a

guardian *ad litem*, there would be no constitutional deprivation here because three guardians *ad litem* were appointed to represent Theresa Schiavo's interests over the course of the litigation.

> n5 The record also reveals that attorney John H. Pecarek was appointed as guardian *ad litem* early in the proceedings. *In re Guardianship of Schiavo*, No. 90-2908-GD-003 (Pinellas Cty. Circ. Ct., Feb. 17, 1994). Late in the litigation, at the request of Florida Governor Jeb Bush, Pinellas County Chief Judge David Demers also appointed attorney Jay Wolfson, M.D. as guardian *ad litem*. *Schiavo VI, 2005 WL 600377* at *1, n. 2.

Plaintiffs' last contention is that Theresa Schiavo's procedural due process rights were violated by Judge Greer's refusal to appoint an independent attorney to represent her interests. The due process clause is [*16] implicated when there is a "deprivation of life, liberty or property at the hands of the government." *Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)*. If one or more of these constitutionally protected interests is at stake, as they undoubtedly are in this case, the due process clause requires notice and the opportunity to be heard. *Id.* "It is . . . fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Cortes. 407 U.S. 67, 80 (1972)*. Unquestionably, in some circumstances, a

28

# APPENDIX TO THE MAJORITY OPINION

meaningful opportunity to be heard includes the right to be represented by counsel. However, "due process is a flexible concept that varies with the particular circumstances of each case, and to determine the requirements of due process in a particular situation we must apply the balancing test articulated in *Mathews v. Eldridge, 424 U.S. 319, 47 L. Ed. 2d 18 (1976)." Grayden, 345 F.3d at 1232-33.*

The *Mathews* balancing test requires consideration of three distinct factors: "First, the private interest that will be affected by the official [*17] action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews, 424 U.S. at 335.*

The first factor weighs the interest at stake. Plaintiffs urge that Theresa Schiavo's life is at stake, while Defendant argues that her liberty to exercise her right to refuse medical treatment is the interest being adjudicated. In either case, a fundamental and important interest is implicated in the court proceedings determining the removal of artificial life support.

The second *Mathews* factor requires consideration of the risk of erroneous deprivation under the procedures used and the probable value of the additional protections urged by the Plaintiffs. Theresa Schiavo's case has been exhaustively litigated, including an extensive trial, followed

by another "extensive hearing at which many highly qualified physicians testified" to reconfirm that no meaningful treatment [*18] was available, and six appeals. As the Florida Second District Court of Appeal stated, "few, if any, similar cases have ever been afforded this heightened level of process." *Schiavo VI, 2005 WL 600377 at *3.*

Throughout the proceedings, the parties, represented by able counsel, advanced what they believed to be Theresa Schiavo's intentions concerning artificial life support. In Florida, counsel for Michael Schiavo as Theresa Schiavo's guardian owed a duty of care to Theresa Schiavo in his representation. *Op. Atty. Gen. 96-94* (November 20, 1996). Finally, with respect to presenting the opposing perspective on Theresa Schiavo's wishes, the Court cannot envision more effective advocates than her parents and their able counsel. Plaintiffs have not shown how an additional lawyer appointed by the court could have reduced the risk of erroneous rulings.

With regard to the third factor, without question the state of Florida has an interest in the welfare of its citizens and in the legal process for adjudicating disputed claims such as were presented to Judge Greer in this case, as evidenced by Florida's well defined statutory scheme. The court's inherent authority to appoint [*19] a guardian *ad litem*, consult independent experts or appoint an attorney if warranted protects the state's interest.

Balancing the three factors, this court concludes that Theresa Schiavo's life and liberty interests were adequately

CI Section USCA ATLANTA

# APPENDIX TO THE MAJORITY OPINION

protected by the extensive process provided in the state courts. Defendant Michael Schiavo and Plaintiffs, assisted by counsel, thoroughly advocated their competing perspectives on Theresa Schiavo's wishes. Another lawyer appointed by the court could not have offered more protection of Theresa Schiavo's interests. Accordingly, Plaintiffs have not established a substantial likelihood of success on the merits on Count II.

## C. Count Three - Violation of Fourteenth Amendment Right to Equal Protection of the Law

For the same reasons relief under Count I was not appropriate, the relief sought in Count III via the equal protection clause is without merit. Plaintiff has not established a substantial likelihood of success on the merits of the claims set forth in Count III. *See Cruzan v. Missouri Dept. of Health, 497 U.S. 261, 287 n.12, 111 L. Ed. 2d 224 (1990)* ("The differences between the choice made *by* a competent person to refuse [*20] medical treatment, and the choice made *for* an incompetent person by someone else to refuse medical treatment, are so obviously different that the State is warranted in establishing rigorous procedures for the latter class of cases which do not apply to the former class.") (emphasis in original).

## D. Counts IV and V - Violation of Religious Land Use and Institutionalized Persons Act (RLUIPA) and Violation of First Amendment Free Exercise of Religion Clause

Plaintiffs bring Counts IV and V alleging that Theresa

Schiavo's right to exercise her religion has been burdened by the state court's order to remove the feeding tube. With respect to Count IV of the Complaint, Plaintiffs allege a claim under the Religious Land Use and Institutionalized Persons Act *(42 U.S.C. § 2000cc-1)*, claiming that her rights to free exercise of her religion have been burdened by the state court's order authorizing removal of her feeding tube in that removal of the feeding tube "imposes a substantial burden on Terry's religious free exercise." That statute expressly requires, however, that "no *government* shall impose a substantial burden on the religious exercise of [*21] a person . . ." *42 U.S.C. § 2000cc*(a) (emphasis added).

In Count V, Plaintiffs make a similar contention under the *42 U.S.C. § 1983* and the free exercise clause, alleging that "Terry's religious beliefs are burdened" by execution of order "in that Terry is being forced to engage in an activity contrary to the tenets of her Roman Catholic faith . . . ." Plaintiffs allege that Defendants have a constitutional duty to accommodate "Terry's sincerely-held religious beliefs."

Undoubtedly, Terry Schiavo enjoys, by virtue of *42 U.S.C. § 2000*-cc(a), a statutorily protected right not to have substantial burdens placed on her religious exercise by the government. The plain language of the statute prohibits government from imposing a substantial burden on the religious exercise of an individual such as Theresa Schiavo. Similarly, the Free Exercise Clause contained in the First Amendment of the Constitution expressly protects the exercise of religion. In their Complaint, Plaintiffs allege

# APPENDIX TO THE MAJORITY OPINION

that the state court's order imposes a substantial burden on Theresa Schiavo's free exercise of religion. (Complaint, P 67).

In order [*22] to succeed on either claim, however, Plaintiffs must establish that the Defendants were state actors. Plaintiffs' claims fail because neither Defendant Schiavo nor Defendant Hospice are state actors. Moreover, the fact that the claims were adjudicated by a state court judge does not provide the requisite state action for purposes of the statute or the Fourteenth Amendment. *See Harvey v. Harvey, 949 F.2d 1127, 1133-34 (11th Cir. 1992)*("Use of the courts by private parties does not constitute an act under color of state law."); *Torres v. First State Bank of Sierra County, 588 F.2d 1322, 1326-27 (10th Cir. 1978)*("We do not think that the 'color of law' reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, . . . subject to the normal processes of

appeal."); *see also Dahl v. Akin, 630 F.2d 277, 281 (5th Cir. 1980)*.

This court appreciates the gravity of the consequences of denying injunctive relief. Even under these difficult and time strained circumstances, however, and notwithstanding Congress' expressed interest in the welfare of Theresa Schiavo, [*23] this court is constrained to apply the law to the issues before it. As Plaintiffs have not established a substantial likelihood of success on the merits, Plaintiffs' Motion for Temporary Restraining Order (Dkt. 2) must be **DENIED.**

**DONE AND ORDERED** in chambers this 22nd day of March, 2005.

**JAMES D. WHITTEMORE**

**United States District Judge**